**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| **P. S. PRODUCTS, INC.,** | ) | **CASE NO. 4:10-CV-1149(JMM)** |
| **BILLY PENNINGTON, Individually** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| **ALIBABA.COM, INC., and** | ) | **DISMISS AND MOTION TO** |
| **ALIEXPRESS.COM** | ) | **TRANSFER VENUE** |
| | ) | |
| **Defendants.** | ) | |

# **TABLE OF CONTENTS**

I.      Fed. R. Civ. P. 12(b)(6) Legal Standard ..................................................................1

II.     Fed. R. Civ. P. 12(b)(6) Legal Standard in Patent Infringement Matters .............................2

III.    Notice of Patent and Induced Infringement Under 35 U.S.C. § 271(b) May Be Proved By Circumstantial Evidence ......................................................................................2

IV.     *Hewlett-Packard*, *Hard Rock Café*, *Napster*, *MGM*, and *Ebay* Cases Support Plaintiff's Cause of Action of Patent Infringement ...........................................................................6

V.      Defendant's Notice of Plaintiff's Patent and Defendant's Control of Its Websites are Sufficient Facts to Support Plaintiff's Claim of Patent Infringement...................................9

VI.     The Defendants have Sufficient Contacts with the State of Arkansas...................................13

        A.      Legal Standard .........................................................................................13

        B.      The Defendant has established contacts with Arkansas and has purposefully availed itself of the benefits and protections of Arkansas law...................................13

VII.    Plaintiff's Choice of Forum Should Not Be Disturbed.........................................................15

        A. Legal Standard ...............................................................................................15

        B.  Transfer would merely shift the inconvenience from one party to the other...................16

VIII.   CONCLUSION...................................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Pages**

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, (2007) ............................................1

*Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827 (1989). .............................................................1

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, (1993). .................................................................................................................................1

*Costen v. Pauline's Sportswear, Inc.,* 391 F.2d 81, 85 (9th Cir. 1968) ............................................1

*Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, (3rd Cir. 1966) .......................1

*Smith v. United States*, 362 F.2d 366, 367-368 (9th Cir. 1966) .........................................................1

*Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S. Ct. 486 (1962) .......................1

*Vineberg v. Brunswick Corporation,* 391 F.2d 184 (5th Cir. 1968) ..................................................2

*Williams v. Chick*, 373 F.2d 330 (8th Cir. 1967) ..............................................................................2

*Kennedy v. Bennett*, 261 F.2d 20  (8th Cir. 1958) .............................................................................2

*Booth v. Barber Transportation Co.*, 256 F.2d 927 (8th Cir. 1958) ................................................2

*Karl Kiefer Mach. Co., v. United States Bottlers Machinery Co.*, 113 F2d 356, 46 USPQ 1 (1940, CA7  Ill) ............................................................................................................................................2

*B&B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 2009 U.S. App. LEXIS 8. (8th Cir. Ark. 2009) ...................................................................................................................................................2

*Phonometrics, Inc., v. Hospitality Franchise Sys.*, 203 F3d 790, 53 USPQ2d 1762 (2000, CA FC) ......................................................................................................................................2

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 16 USPQ2d 1587 (Fed. Cir. 1990) ...3

*Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 229 USPQ 805 (Fed Cir. 1986) ...............3

*Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613 (E.D. Mich. 2003) ................................3, 4

*Water Technologies Corp., Supra v. Calco, Ltd., Supra,* 850 F.2d 660, 1988 U.S. App. LEXIS 8175 (1988) ................................................................................................3

*Insituform Technologies, Inc., v. CAT Contracting, Inc.*, 161 F.3d 688, 48 USPQ2d (BNA) 1610 (1998)........................................................................................................3

*Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 137 USPQ 84 (5th Cir. 1963).......................................4

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 1 Fed. Appx. 879 (Fed. Cir. 2001)........................................................................................................4

*Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171 (S.D.N.Y. 1999) ................................5

*Hauni Werke Koerber & Co. v. Monlins*, Ltd. 183 USPQ 168 (E.D. Va. 1974)..............................5

*Continental Ins. Co., v. Del Astra Industries, Inc.*, 25 USPQ2d 1317 (1992 ND Cal)....................6

*Hewlett-Packard Co., v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 15 USPQ2d (BNA) 1525 (1990)........................................................................................................6

*Hard Rock Café Licensing Corporation v. Concession Services Incorporated*, 955 F.2d 1143, 21 USPQ2d (BNA) 1764 (1992)........................................................................................................6

*A & M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004, (9th Cir. 2001)................................7

*MGM v. Grokster*, 545 U.S. 913, 125 S. Ct. 2764 (2005) ................................7

*Tiffany, Inc., v. Ebay, Inc.*, No. 4 Civ. 4607 (RJS) (2008)........................................8

*Ultimatics, Inc. v. Minimatic, Inc.*, 715 F. Supp. 1448; 1989 U.S. Dist. Lexis 8358 (1989)........13

*Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651 (8th Cirt. 1982)....................................13

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528 (1987)....................................13

*Ferrell v. West Bend Mutual Insurance Company,* 393, F.3d 786 (1989)....................................14

*Terra Int'l v. Mississippi Chem. Corp.,* 119 F.3d 688 (8th Circ. Iowa 1997) ................................15

*Lewis and Clark Outdoors, Inc. V. L.C. Indus.,* 2008 U.S. Dist. LEXIS 51771 (W.D. Ark. June 11, 2008)........................................................................................................15

**STATUTES**

35 U.S.C. § 271 (a) ........................................................................................................5

35 U.S.C. § 271(b) ........................................................................................2, 3, 5, 6

35 U.S.C. § 271 (c) ........................................................................................................5

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. § 12(b)(6)...............................................................................1,2

Fed. R. Civ. P. § 12(b)(2)................................................................................15

## **OTHER AUTHORITIES**

*4 Chisum on Patents*, (Matthew Bender) § 17.04 .......................................................3, 5

Patent Law Active Inducement of Infringement District Court Hold That Inducement Liability
Requires Proof of Intent to Induce Violation of the Law – *Amersham Pharmacia Biotech, Inc. v.
Perkin-Elmer Corp.*, No. C 97-04203 Crb, 2000 WI 1897300 (N.D. Cal. Dec. 22, 2000)
115 Harv. L. Rev. 1246, 1249 (2002). ............................................................5

## I.     Fed. R. Civ. P. 12 (b)(6) Legal Standard

A motion to dismiss under Rule 12(b)(6) should be granted when a plaintiff fails to state a claim upon which relief can be granted.  Dismissal should be granted only when the factual allegations contained in the complaint fail to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), or when an issue of law is dispositive.  *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  In evaluating the complaint, only its legal sufficiency may be considered, not the weight of the evidence supporting it. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Furthermore, the court must accept as true all factual allegations, even if doubtful. *Bell Atlantic,* 550 U.S. at 555.

Rule 12(b)(6) explicitly provides, that if the Court in ruling on the motion takes into consideration matters outside the pleadings, it must treat the motion as one for summary judgment under Rule 56. If both parties file affidavits and exhibits in support of their respective positions, which are not excluded by the District Court, the motion to dismiss should properly be treated as one for summary judgment. *Costen v. Pauline's Sportswear, Inc.*, 391 F.2d 81, 85 (9th Cir. 1968);  *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 343 (3rd Cir. 1966); *Smith v. United States*, 362 F.2d 366, 367-368 (9th Cir. 1966).

Considering the motion therefore as one for summary judgment the crucial question is whether this case presents a genuine issue as to some material fact. Unless the pleadings and supporting documents disclose beyond any doubt the absence of a genuine issue of fact, summary judgment should not be entered. *Poller v. Columbia Broadcasting System, Inc.*, 368

U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962); *Vineberg v. Brunswick Corporation,* 391 F.2d 184, 187 (5th Cir. 1968); *Williams v. Chick*, 373 F.2d 330, 331-332 (8th Cir. 1967); *Kennedy v. Bennett*, 261 F.2d 20, 22 (8th Cir. 1958); *Booth v. Barber Transportation Co.*, 256 F.2d 927, 928 (8th Cir. 1958).

## II.     Fed. R. Civ. P. 12 (b)(6) Legal Standard in Patent Infringement Matters

In a patent suit, a motion to dismiss a complaint should not be granted if from the record before the Court it is impossible to appraise the claims or to determine their scope or range of equivalents of their elements.  *Karl Kiefer Mach. Co., v. United States Bottlers Machinery Co.*, 113 F2d 356, 46 USPQ 1 (1940, CA7  Ill).

In patent cases the Courts assume as true all factual allegations of a Complaint.  To survive a motion to dismiss the complaint must allege only enough facts to state a claim to relief that is plausible on its face.  *B&B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 387, 2009 U.S. App. LEXIS 8. (8th Cir. Ark. 2009).

Federal Civil Procedure Rule 12(b)(6) pleading requirements for a Complaint alleging patent infringement cannot be extended to require a plaintiff to specifically include each element of claims of asserted patent, since imposing such requirements would contravene the notice pleading standard, and thus, the patentee is only required to plead facts sufficient to place the alleged infringer on notice.  *Phonometrics, Inc., v. Hospitality Franchise Sys.*, 203 F3d 790, 53 USPQ2d 1762 (2000, CA FC).

## III.     Notice of Patent and Induced Infringement under 35 U.S.C. § 271(b) May Be Proved By Circumstantial Evidence

35 U.S.C. § 271(b) provides that "whoever actively induces infringement of a patent shall be liable as an infringer."  Thus a person infringes by actively and knowingly aiding and abetting

another's direct infringement of the patent. *4 Chisum on Patents*, § 17.04, 17-70.  Section 271(b) recites in broad terms that one who aids and abets an infringement in likewise an infringer.  *4 Chisum on Patents*, § 17.04, 17-85.   The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringement.  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed. Cir. 1990).  Section 271(b) deals with active inducement of infringement. . . It covers the range of actions by which one may cause, urge, encourage, or aid another to infringe a patent.  *4 Chisum on Patents*, § 17.01, 17-3.

However, as with contributory infringement, direct infringement may be established by circumstantial evidence.  *Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 229 USPQ 805 (Fed Cir. 1986).  Inducement of infringement of a patent may be established by circumstantial evidence that direct infringement occurs as a result of the infringer's acts. *Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613, 620-21 (E.D. Mich. 2003).   "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Moleculon Research Corp. v. CBS, Inc.*, 793 F2d 1261, 1272, 229 USPQ 805, 813 (Fed Cir. 1986).  The requisite intent to induce infringement may be inferred from all of the circumstances. *Water Technologies Corp., Supra v. Calco, Ltd., Supra*, 850 F.2d 660, 669, 1988 U.S. App. LEXIS 8175 (1988).  Furthermore, a crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent.  *Insituform Technologies, Inc., v. CAT Contracting, Inc.*, 161 F.3d 688, 695, 48 USPQ2d (BNA) 1610 (1998).

Additionally, one Court stated, "Civil culpability need not stop with the dealer who does the final act of making, using or selling.  The prohibition of the law, now codified in § 271(b), extends to those who induce the infringement.  Of course inducement has connotations of active

steps knowingly taken . . . .but with that qualifying approach, the term is as broad as the range of actions by which one in fact causes, urges, or encourages, or aids another to infringe a patent." *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411, 137 USPQ 84 (5th Cir. 1963).

"There is no legal basis for [an accused infringer's] claim that [a patent owner] must prove specific instances of direct infringement in order to recover damages from inducement with regard to those products that that are capable of a non-infringing mode of operation." *Hilgrave, Inc. v. Symantec Corp.*, 272 F. Supp.2d 613, 620-21 (E.D. Mich. 2003). "A party may establish intent to induce infringement through circumstantial evidence." *Id.*

"In *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.,* 1 Fed. Appx. 879 (Fed. Cir. 2001)*,* the district court had granted summary judgment of damages to the patentee for each 'Green Machine saw' sold by the defendants….On appeal, the Defendant Green Machine Corporation argued 'that a material question of fact has been raised regarding whether some or many of the Green Machine saws sold were actually used in a directly infringing manner.'…The court found the patentee's reliance upon advertisements and an Operation and Maintenance manual insufficient to support a finding that each sale of the Green Machine saw led to an act of infringement, despite the fact that the patentee had relied upon essentially the same evidence at trial to prove inducement of infringement….The court noted, however, that it was 'not imply[ing] that [the patentee] is required to demonstrate a one-to-one correspondence between united sold and directing infringing customers. Proof of inducing of infringement or direct infringement may be shown by circumstantial evidence. *Id.*

Thus, *Chiuminatta* does not support [an] argument that any recovery of damages for inducement of infringement must be limited to instances in which [a patent owner] may rely

upon circumstantial evidence to prove damages from inducement."   "Although proof that a

defendant has actively induced infringement requires proof that another has directly infringed the

patent in suit, such direct infringement may be established by circumstantial evidence of

extensive sales by defendant of a product capable of use to practice the patented method and

distribution by defendant of an instruction manual teaching the patented method." *Mickowski v.*

*Visi-Trak Corp.*, 36 F. Supp. 2d 171, 180 (S.D.N.Y. 1999); *4 Chisum on Patents*, § 17.04, 17-74.

In *Hauni Werke Koerber & Co. v. Monlins*, Ltd. 183 USPQ 168 (E.D. Va. 1974), the

Court suggested that the knowledge requirement may be less with Section 271(b).   "The

language of § 271(b) does not refer to knowledge on the part of the contributory infringer as does

the language of § 271(c)." *Id.* at 171.  The Court went on to say, "the Court is inclined toward

the view that an inducement under § 271(b), like direct infringement under § 271(a), does not

require a specific intent. . . . in any event, the Court considers it within the scope of the pleadings

for the plaintiff to prove that a specific intent was here present." *Id.*

*4 Chisum on Patents*, § 17.04, 17-84, states, "The decisions leave doubt as to the "intent"

requirement's meaning for active inducement of the infringement."   One commentator even

noted the following:

> "A clear definition of the mens rea required for inducement liability has eluded
> even the Federal Circuit: must a § 271(b) plaintiff prove that the defendant
> specifically intended to induce violation of the law, . . . or is it sufficient prove
> that the defendant intended to induce the acts later held to constitute
> infringement? . . .the notion that a defendant may escape liability under § 271(b)
> merely by obtaining a plausible noninfringement opinion remains highly
> controversial among both court and commentators.

Patent Law Active Inducement of Infringement District Court Hold That Inducement Liability

Requires Proof of Intent to Induce Violation of the Law – *Amersham Pharmacia Biotech, Inc. v.*

*Perkin-Elmer Corp.*, No. C 97-04203 Crb, 2000 WI 1897300 (N.D. Cal. Dec. 22, 2000), 115

Harv. L. Rev. 1246, 1249 (2002).  Furthermore, the Court in *Continental Ins. Co., v. Del Astra Industries, Inc.*, 25 USPQ2d 1317 (1992 ND Cal), stated that advertising activities of a defendant can amount to inducement of patent infringement.

IV. **_Hewlett-Packard_, _Hard Rock Café_, _Napster_, _MGM_, and _Ebay_ Cases Support Plaintiff's Cause of Action of Patent Infringement**

In *Hewlett-Packard Co., v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 15 USPQ2d (BNA) 1525 (1990), the Court discussed the question of what level of knowledge or intent is required to find active inducement under § 271(b).  The Court stated that 35 U.S.C § 271(b) is much broader than § 271 (c) and certainly does not speak of any intent requirement to prove active inducement. But, proof of intent must be proved by at least circumstantial evidence.  *Id.* at 1469.  The Court looked at the totality of the circumstances to determine whether induced infringement occurred in the case.  *Id.*

From the outset a reader of the *Hard Rock Café Licensing Corporation v. Concession Services Incorporated*, 955 F.2d 1143, 21 USPQ2d (BNA) 1764 (1992), will see that the case resolves around trademark infringement.  However, the case is often cited in patent infringement cases and cites patent infringement cases.  Furthermore, the facts of the case are directly on point to the facts in the present matter.  The general facts of the case revolve around *Hard Rock Café* pursuing companies for selling illegal copies of *Hard Rock Café* t-shirts at flea markets and retail locations.  The Defendant *CSI* operated flea markets whereby vendors would buy space to sell merchandise.  *CSI* sold a space at a flea market to a vendor, Parvez.  The vendor, Parvez, sold illegal copies of *Hark Rock Café* t-shirts.  *Hard Rock Café* did not sue the vendor, Parvez, they sued the company, *CSI*, who sold the flea market space to the vendors.  *CSI* did not have knowledge that Parvez was selling illegal copies of *Hard Rock Café's* t-shirts.  *CSI* had very

6

little supervision of the flea markets.  Additionally, at no point before filing the lawsuit did *Hard Rock Café* notify *CSI* of the illegal t-shirts.  The main issue the Court discussed was whether *CSI* could be contributorily liable for Parvez's trademark infringement.  The Court held that they were liable for trademark infringement.  *Id.* at 1149.

In *A & M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004, (9th Cir. 2001), the Court held that software created and hosted by Napster violated copyright laws.  Napster hosted a website whereby individuals transferred and stored files via peer-to-peer file sharing.  The individuals were actually the party copying and placing the content on Napster's website but, the Plaintiff's sued Napster, who hosted the website.  The content being copied was the subject of the Court's analysis.  Plaintiffs claimed that Napster users are engaged in the wholesale reproduction and distribution of copyrighted works, all constituting direct copyright infringement and that Napster was a contributory infringer.  The district court agreed.  The Ninth Circuit affirmed.

In *MGM v. Grokster*, 545 U.S. 913, 125 S. Ct. 2764 (2005), the Court discussed whether a distributor of a product is liable for acts of infringement by third parties who illegally use the product.  This case addressed a peer-to-peer network created by the Defendants whereby its users could share electronic files.  The Defendants in the case were sued for copyright infringement by *MGM*.  The users of the Defendant's network were transferring movies electronically over the network. (Although this case is a copyright infringement case it discusses patent infringement and cites patent infringement cases.)  Again, as in the *Hard Rock* and *Napster* cases the Plaintiffs did not sue the users.  The Plaintiffs sued the third party, *Grokster*, who provided the access to the infringement.  The Court stated, "one who distributes a device with the object of promoting its use to infringe copyright. . . .is liable for the resulting acts of infringement by third parties." *Id.* at 918.

In discussing patent infringement the Court went on to say, "The classic case of direct evidence of unlawful purpose occurs when one induces the commission of infringement by another, or "entices or persuades another" to infringe. . . . as by advertising.  *Id*. at 935.  The Court in this case held that the Defendant was liable as a contributory infringer based on the inducement rule founded in patent law. *Id*. at 936.  The Court stated, "the inducement rule, too, is a sensible one for copyright, as shown by clear expression or affirmative steps taken to foster infringement by third parties."  *Id*. at 937.

Lastly, comes an opinion from a bench trial in the United States District Court in the Southern District of New York, styled, *Tiffany, Inc., v. Ebay, Inc.*, No. 4 Civ. 4607 (RJS) (2008). The issue the Court addressed at trial was whether *Ebay* was liable as a contributory infringer of *Tiffany's* trademark.  The facts at issue revolved around jewelry being sold on *Ebay's* website and listed as *Tiffany* jewelry when it fact the jewelry were knockoffs.  *Ebay* operated a website whereby person could list items for free or for a nominal fee.  *Ebay* never took control of the products nor did they inspect them.  The District Court held that *Ebay* provided a service and by a preponderance of evidence, "that *Ebay* exercises sufficient control and monitoring over its website such that it fits squarely with the *Fonavisa* and *Hard Rock Café* line of cases."  *Id*. at 43. The Court found that *Ebay* retains control over the transactions, supplies the marketplace for the sale of counterfeit goods, make a profit from listing and sales and maintains significant control over its website.  Therefore, the District Court held that the facts in *Ebay* at least met the standards to be evaluated as a contributory infringer.  *Id*. at 44.

**V.**    **Defendant's Notice of Plaintiff's Patent and Defendant's Control of Its Websites are Sufficient Facts to Support Plaintiff's Claim of Patent Infringement**

The Defendant has directly infringed on the Plaintiff's patent and induced third parties to infringe on the Plaintiff's patent.  On January 14, 2010, the Plaintiff sent a cease and desist letter to the Defendant demanding that it remove infringing copies of its patented product from the Defendant's websites, www.alibaba.com and www.aliexpress.com.  Please see Exhibit A.  In the letter the Plaintiffs gave notice to the Defendant that it possessed a patent on the product. Hesitantly, and with protest the Defendant removed only two listings for a short time.  However, shortly thereafter over twenty listings of infringing products reappeared on the Defendant's websites. Over the next six months more and more listings appeared.  Immediately, after the filing of the pleadings in this matter the Defendants quickly removed all listings of the infringing products.  However, as early as this week new listings of the infringing products reappeared on the Defendant's websites.

The Plaintiff specializes in the manufacture and distribution of stun guns, gun cleaning kits, and other personal protection devices.  The Plaintiff holds a patent for a product known as Blast Knuckle Stun Gun, patent No. US D561,294 S and patent No. US D576,246 S.  The Plaintiff markets and sales this device through trade specialty shows throughout the United States, as well as through internet distribution.  Its clients include: Gander Mountain, Cablea's, National Rifle Association, and The Sportsman's Guide. This product did not exist anywhere in the world until it was designed, patented and placed in the stream of commerce by the Plaintiffs. In 2009, it was the Plaintiff's top selling product.  However, due to the illegal copies of the Plaintiff's product being listed on the Defendant's websites this is no longer the case.  The price listed on Defendant's website is nearly seventy-five percent (75%) cheaper.

Additionally, the Plaintiff was a paying gold member of the Defendant's website.  Please see Exhibit B.   After the Complaint in this matter was filed the Defendants removed the Plaintiff's listing from its websites.  On the Plaintiff's listing on the Defendant's websites their patent numbers were displayed.  The Plaintiff was not aware that there were illegal products on the Defendant's websites until Plaintiff's customers notified them.  Some clients even cancelled orders and placed orders with vendors on the Defendant's website.  Most shockingly, the photos used on all the listing of the illegal products on www.alibaba.com and www.aliexpress.com are the Plaintiffs, Billy Pennington's hand.

The Defendant lacks candor with the Court by stating that its websites are merely a marketing firm for Alibaba Hong Kong.  The Defendant operates and manages its websites in the State of California.  The Plaintiff only had contact with the Defendant's office in California.  When the infringing products first appeared in January of 2010 the Plaintiff notified the Defendant's office in California and the products were removed for a short time.  Additionally, www.alibaba.com lists its California and Hong Kong address on its website.  Please see Exhibit C.  Alibaba.com and Aliexpress.com are proper parties in this lawsuit.  Furthermore, the website www.aliexpress.com is operated by the business organization managed and controlled by the Defendants.  The Defendants cannot disprove this fact.  The Defendants state in their motion that they are merely a marketing website.  This is laughable.  On the website www.alibaba.com it lists the Defendants its policy for listing products.  Please see Exhibit D.  This fact indicates that the Defendants manage and control what products will and will not be listed on the website.

The new storefront is the World Wide Web market place.  This does not need to be proven to this Honorable Court as it is a staple of our global economy.  It must be noted that on the Defendant's websites it promotes itself as the "global marketplace."  No longer do persons

have to open a physical storefront.  The same patent protections from illegal products must be offered to patent holders on the World Wide Web.

The Defendant promotes its website.  The Defendant manages its websites.  It profits from its websites, as vendors must pay a fee to list their products.  The Defendant approves who may list products and its website and it chooses who may not be listed on their websites.  Absent the Defendant's websites the Plaintiffs would not have been damaged nor would its patents been infringed upon by the third parties.  After receiving notice of the Plaintiff's patents the Defendants continued to directly infringe on the Plaintiff's patent and induce third parties to list illegal products on its websites.

In August of 2010 both parties attended the ASD trade show in Las Vegas, Nevada.  The Plaintiff purchased a booth offering its patented product for sale to buyers.  Alternatively, in the same venue the Defendants purchased a booth and had the illegal products for sale to the same buyers for a cheaper price.  The Defendants products infringed on the Plaintiff's patent.  At the time of the ASD trade show the Defendant had received notice that its products violated the Defendant's patents.  The Defendants chose to ignore the Plaintiffs notice because of the financial incentives it receives from its websites.

In the *Napster, Grokster and Ebay* cases the Courts held that the owners and operators of websites were liable as contributory infringers when third parties with access to the websites infringed on copyrights and trademarks.  Although the legal standard in copyright and trademark infringement cases is not as stringent with patent infringement cases the law is similar and as is more often than not the facts of cases are the same.  As is the case here the Defendants operate a

11

website whereby third parties place products for sale that violate the Plaintiffs patents.   The Defendants manage and created the website

The current case is analogous to the *Hard Rock Café* case.  The Defendants in the *Hard Rock Café* case were operating a flea market and the Defendants in the current case operate an online market.  The facts of the two cases are extremely similar.  As the defendant in the Hard Rock Café case the Defendants in the current case offered, operated and managed the market.  Both Defendants made a profit for space sold to vendors.  Both Defendants neither retained possession of the products for sale.  Neither Defendant thoroughly inspected the products for infringement.  Both Defendants has policies and procedures for the vendors to following.  As the Defendant in the Hard Rock Café case was found to be an infringer, likewise the Defendants in the current should be found to be infringers.

Enough circumstantial evidence exists to support the Plaintiff's claim for patent infringement, whether direct or induced, and the Plaintiff offers that the discovery process will produce direct evidence of the Defendants infringements.  Additionally, a motion to dismiss a complaint in a patent case should not be granted if from the record before the Court it is impossible to appraise the claims or to determine their scope or range of equivalents of their elements.  At this point in the litigation is it impossible to appraise the Plaintiff's claims or to determine their scope or range of equivalents of their elements.  Furthermore, the Plaintiffs must allege only enough facts to state a claim to relief that is plausible on its face and to put the Defendants on notice that they have violated the Plaintiff's patents.  The Plaintiffs have met this burden.

**VI.**   **The Defendants have Sufficient Contacts with the State of Arkansas**

**A.**   **Legal Standard**

This Defendant has established sufficient contacts with the State of Arkansas to avail itself of the protections of this State; therefore, this Court has personal jurisdiction over the Defendants.   "The Arkansas long-arm statute provides for personal jurisdiction over persons transacting any business in this state or contracting to supply services or things in this state." *Ultimatics, Inc. v. Minimatic, Inc.*, 715 F. Supp. 1448; 1989 U.S. Dist. Lexis 8358 (1989).

"The test for due process is whether there are sufficient 'minimum contacts' between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with the traditional notions of fair play and substantial justice." *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 654 (8th Cirt. 1982)*.*   The requisite minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conduction activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 85 L. Ed. 2d 528 (1987).

**B.**   **The Defendant has established contacts with Arkansas and has purposefully availed itself of the benefits and protections of Arkansas law**

The Defendants actions of contracting with citizens of this State, establish the requisite minimum contacts whereby the Defendant has purposefully availed itself of the privilege of conducting business in this state.   The Defendant has misrepresented to the Court the facts alleged in its affidavit attached to its Motion to Dismiss.   Alibaba.com, Inc., incorrectly states that it has never entered into any contractual obligation with a resident of Arkansas regarding any services it provides.   The Plaintiff has contracted with the Defendant to be a "Gold Supplier"

13

on the Defendant's website.  In exchange for payment, the Defendant agreed to provide these "Gold Supplier's" with specific advantages over "free members."  Please See Exhibit B.  This contractual relationship constitutes minimum contacts with residents of this state, and would make it reasonably foreseeable to the Defendant that it might be sued in Arkansas.  Additionally, it is unknown, but likely that the Defendant has contracted with other residents of Arkansas to perform its "global marketplace" services.  At a minimum, the Plaintiff should be allowed to conduct further discovery to further establish personal jurisdiction.

The Defendant's further misrepresents to the Court that they do not exercise any control over the entities that utilize its services.  The Defendant's web-site however, contains a "product listing policy," whereby the Defendant specifically dictates items that may not be posted.  Plesae See Exhibit D.

The Defendant purports to market its services to small and medium business throughout the United States.  The Defendant presumably offers its services to a broad spectrum of States to make its services more marketable and profitable.  These services are akin to insurance policies offered throughout the United States.  In *Ferrell v. West Bend Mutual Insurance Company*, the 8th Circuit upheld the district court's finding that minimum contacts were sufficiently established by the Defendant's "territory of coverage clause."  *Ferrell v. West Bend Mutual Insurance Company,* 393, F.3d 786 (1989).  Because the insurance company offered coverage to various forums, "it was grossly reasonable for the insurance company to anticipate litigation concerning its policies, [] and the exercise of personal jurisdiction was fair and proper." *Id* at 790.  Much like West Bend, if the Defendant wished to avoid lawsuits in certain jurisdictions, it could exclude that territory from its offer of services.  The Defendant has failed to do this, however,

and has marketed itself as a "global marketplace" offering services throughout the United States and other countries.

Because the Defendant has reached into this state and directed its services to residents of Arkansas, it has purposefully availed itself of the privileges and protections of this State. Therefore, the exercise of personal jurisdiction is fair and proper.  As such, the Defendant's request to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(2) should be denied.

### VII.  Plaintiff's Choice of Forum Should Not Be Disturbed

### A.  Legal Standard

The Plaintiff is a corporation with its principle place of business located in Arkansas. Many of the witnesses the Plaintiff will call are either residents of Arkansas or are residents of neighboring states of Arkansas.  "In general, courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving a transfer is warranted." *Terra Int'l v. Mississippi Chem. Corp.,* 119 F.3d 688, 695 (8th Circ. Iowa 1997).  The 8th Circuit has further held that "a state generally has a manifest interest' in providing its residents with a convenient forum for redressing injuries inflected by out-of-state actors." *Lewis and Clark Outdoors, Inc. V. L.C. Indus.,* 2008 U.S. Dist. LEXIS 51771, 13-14 (W.D. Ark. June 11, 2008).

"In general, federal courts [] give considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under §1404(a) typically bears the burden of proving that a transfer is warranted. The party seeking transfer is required to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. A transfer which would merely shift the inconvenience from one party to another should not be granted."

*Lewis & Clark Outdoors, Inc. v. L.C. Indus.*, 2008 U.S. Dist. LEXIS 51771, 15-16 (W.D. Ark. June 11, 2008).

**B.  Transfer would merely shift the inconvenience from one party to the other**

In the present case before this Court, the Plaintiff is a corporation with its principle place of business in Arkansas.  Arkansas has a vested interest in providing its residents with a forum in which to bring lawsuits against foreign bad actors, and the Plaintiff has appropriately selected this forum to protect his rights.  The Plaintiff and the Plaintiff's witnesses will be from Arkansas and the surrounding states, such as Texas, Georgia, and Mississippi.  The Plaintiff and its witnesses would incur substantial expenses if this case were to be transferred to the Northern District of California.  Transferring this case would, in essence, merely shift the inconvenience from on party to another, and therefore should not be granted.

The Defendant's contention that they have filed a declaratory judgment action against the Plaintiff in the Northern District of California, and the issues could be more efficiently resolved in the Northern District of California is a ruse.  The Plaintiff, through his counsel will be filing an Answer, Stay, and Motion to Transfer these proceedings to the United States District Court for the Eastern District of Arkansas.  These issues could just as conveniently be transferred to this jurisdiction without causing a substantial inconvenience to the Plaintiff.

**VIII.   Conclusion**

WHEREFORE, the Court should find that the Plaintiffs have stated facts to support its claim for patent infringement, that this Honorable Court has personal jurisdiction over the

Defendants and Plaintiff's forum state is the proper venue.

Respectfully submitted,

Chris H. Stewart
Ark. Bar No. 03-222
Attorney for Plaintiffs
Stewart Law Firm
P.O. Box 3422
Little Rock, AR 72203
501-353-1364 Phone
501-353-1263 Fax


Attorneys for Plaintiffs,
P.S. Products, Inc. and Billy Pennington

By: /s/ Chris H. Stewart

17

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing was electronically filed with the Clerk which shall send notification of such filing to the following:

- Darryl M. Woo
  dwoo@fenwick.com

- Kevin Crass
  crass@fridayfirm.com

On this 17th day of October, 2010.

By: /s/ Chris H. Stewart

18